IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRANSFORMATION-POINT TECHNOLOGIES, LLC and FIRST RAINBOW, LTD., and  CID HOLDINGS, LTD., JOHN SCHAFFER and FRED PFEIFER, derivatively on behalf of First Rainbow, Ltd. and Transformation-Point Technologies, LLC, | CIVIL ACTION NO. |
| *Plaintiffs,* | **JURY TRIAL DEMANDED** |
| vs. | |
| W&Y DISTILLATION TECHNOLOGIES, LLC, SSOT TECHNOLOGIES, LTD., W&Y ENGINEERING LTD., CUSTOM SEPARATIONS TECHNOLOGIES, and JOHN WEYRAUCH, JR., DIFFUSION TECHNOLOGIES LTD., and MARK ZHI XUAN YANG, individually and in their capacities as members, managers, and directors of First Rainbow, Ltd. and/or Transformation-Point Technologies, LLC, | |
| *Defendants.* | |

## CIVIL COMPLAINT

AND NOW, come the Plaintiffs, First Rainbow, Ltd. ("**First Rainbow**") and Transformation-Point Technologies, LLC ("**TPT**"), and Plaintiffs, John Schaffer ("**Schaffer**"), CID Holdings, Ltd. ("**CID**"), and Fred Pfeifer ("**Pfeifer**"), derivatively on behalf of First Rainbow and TPT (collectively, "**Plaintiffs**"), by and through their undersigned counsel, and file the following Complaint against Defendants John Weyrauch, Jr. ("**Weyrauch**"), Mark Zhi Zuan Yang ("**Mark Yang**" or "**Yang**"), W&Y Distillation Technologies, LLC ("**W&Y Distillation**"), SSOT Technologies, Ltd. ("**SSOT**"), W&Y Engineering Ltd. ("**W&Y Engineering**"), Diffusion Technologies Ltd. ("**DTL**"), and Custom Separations Technologies ("**CST**") (collectively "**Defendants**"), and in support thereof, aver as follows:

## INTRODUCTION

1.      This is a derivative action in which TPT and First Rainbow (the "**Plaintiff-Entities**") are primarily suing two (2) of their members / managers / directors, Weyrauch and Yang (collectively, the "**Member Defendants**") for illegally competing against the Plaintiff-Entities and diverting funds, assets, and business opportunities belonging to the Plaintiff-Entities for their own personal gain.

2.      In addition to breaching their fiduciary duties owed to the Plaintiff-Entities and dissipating the Plaintiff-Entities' assets, the Member Defendants have stolen the Plaintiff-Entities' trade secrets and tortuously interfered with the Plaintiff-Entities' current and prospective business relationships.

3.      Incredibly, Weyrauch, the kingpin of the Member Defendants' unlawful scheme, turned his back on the Plaintiff-Entities and cheated his fellow members, Plaintiffs Schaffer and Pfeifer, after they financially supported Weyrauch during his transition from his prior employer to working fulltime for the Plaintiff-Entities.

4.      After multiple years of receiving millions of dollars working for the Plaintiff-Entities, Weyrauch conspired with Yang to surreptitiously disadvantage and dismantle the business operations of the Plaintiff-Entities and divert the assets, profits, opportunities, and customers of the Plaintiff-Entities to entities owned and controlled by Weyrauch and/or Yang, including Defendants W&Y Distillation, SSOT, W&Y Engineering, DTL, and CST (the "**Defendant Entities**").

5.      Pursuant to the underlying operating agreements for the Plaintiff-Entities (the "**Operating Agreements**"), **a Director – specifically including Weyrauch and Yang – shall be liable "in damages or otherwise, to any Member or to the Company … [when] the Director**

**has breached or failed to perform its duties under the Law and such breach or failure to perform constitutes self-dealing, willful misconduct, recklessness or an intentional breach of this Agreement."**

6.      In the case at bar, as set forth in detail herein, Weyrauch and Yang have, among other things, breached their duties under the Law and as defined by the Operating Agreements; engaged in self-dealing and willful misconduct; and intentionally harmed (and continue to harm) Plaintiffs.

7.      The Plaintiffs hereby assert claims against the Defendants for breach of fiduciary duty; violation of the Computer Fraud and Abuse Act, 18 U.S.C.A. §§ 1030, *et seq.* (the "**CFAA**"); conversion; breach of contract; misappropriation in violation of the Defend Trade Secrets Act, 18 U.S.C.A. §§ 1836, *et seq.* ("**DTSA**") and the Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S.A. §§ 5301, *et seq.* ("**PUTSA**"); unfair competition; tortious interference with business relations; civil conspiracy; and unjust enrichment.

8.      The Plaintiffs also seek equitable relief in the form of an accounting and a constructive trust.

## PARTIES

### The Plaintiffs

9.      Plaintiffs TPT and First Rainbow (*i.e.,* the "**Plaintiff-Entities**") primarily design, fabricate, and install specialized industrial equipment and processes to handle, purify, separate and/or distill gases for various types of companies.

10.      TPT operates in the United States, while First Rainbow operates in China.

11.     TPT is a Pennsylvania limited liability company with a principal place of business located at 168 S. Cedar Street, Nazareth, Pennsylvania 18064.  TPT Operating Agreement, § 2.1 (attached as Exhibit "A").

12.     TPT is a manager-managed LLC.  TPT Operating Agreement, §§ 2.3, 5.1.

13.     The signatories to the TPT Operating Agreement, and the managers and directors of TPT, at all relevant times hereto, were, and are: (i) Schaffer, (ii) Pfeifer, (iii) Weyrauch, and (iv) Yang. TPT Operating Agreement, § 5.1.

14.     Each of the foregoing members of TPT owns a 25% membership interest in the company.  *Id*.

15.     First Rainbow is a limited company organized as an International Business Company through the filing of a certificate of organization with the Republic of Seychelles.   First Rainbow Operating Agreement, § 2.1 (attached as Exhibit "B").

16.     First Rainbow's principal place of business is located at Room 1201A, 12/F, East Ocean Centre, 98 Granville Rd, Tsim Sha Tsui East, Kowloon, Hong Kong.

17.     First Rainbow is a manager-managed Ltd. First Rainbow Operating Agreement, §§ 2.3, 5.1.

18.     The signatories to the First Rainbow Operating Agreement, and the managers and directors of First Rainbow, at all relevant times hereto, were and are: (i) Schaffer, (ii) Weyrauch, (iii) CID / Pfeifer, and (iv) DTL / Yang. *Id*. at  5.1.

19.     Each of the foregoing members of First Rainbow owns a 25% interest in the company.  *Id*.

20.     Pfeifer is the sole shareholder of CID, a Pennsylvania S Corporation that owns a 25% interest in First Rainbow.

21.     Pfeifer holds his interest in First Rainbow by way of his ownership of CID.  As it relates to First Rainbow, Pfeifer and CID are collectively referred to as "**Pfeifer**."

22.     Yang is the sole shareholder of DTL, a limited corporation that owns a 25% interest in First Rainbow.

23.     Yang holds his interest in First Rainbow by way of his ownership of DTL.  As it relates to First Rainbow, Yang and DTL are collectively referred to as "**Yang**."

24.     Schaffer and Weyrauch directly and personally own their respective interests in First Rainbow.

25.     Plaintiff Schaffer is an adult individual residing at 150 Kettle Ridge Drive, Stroudsburg, Pennsylvania 18360.

26.     Plaintiff Pfeifer is an adult individual residing at 622 S. 4th Street, Bangor, Pennsylvania 18013.

27.     Schaffer and Pfeifer are collectively referred to herein as the "**Member-Plaintiffs**."

<u>**The Defendants**</u>

28.     Upon information and belief, Defendant W&Y Distillation is a Florida limited liability company, incorporated on February 17, 2021, with a registered address at 713 Manns Harbor Drive, Apollo Beach, Florida 33572 and a "Fabrication Facility" located at 1111 N 34th Street Tampa, Florida 33605.

29.     On its website, W&Y Distillation touts that it is a "complete OEM solution for the Electronics & Specialty Gas Industry" servicing project needs from "process design, to fabrication and installation."  https://www.wytechnologies.net/ (visited February 21, 2023).

30.     **This is the same work performed by the Plaintiff-Entities.**

31.     W&Y Distillation further states that it "acts as the US Domestic arm for SSoT Technologies, Ltd.," thereby giving W&Y Distillation a "major advantage in the industry."  W&Y Distillation website, https://www.wytechnologies.net/clients (visited February 21, 2023).

32.     Pursuant to its publicly available incorporation filings, Weyrauch and Yang are the sole members of W&Y Distillation.

33.     Upon information and belief, Defendant SSoT is a limited company organized as an International Business Company with offices located at 3F., No.6, Yuanling Street, Zhongzheng District, Taipei City, Taiwan (R.O.C), 10003; Room 1201A, 12F, East Ocean Centre, 98 Granville Road, Tsim Sha Tsui, East Kowloon, Hong Kong; and Room 1301, Building C1, Jiaoxi Road, China Jinmao Building, Nansha District, Guangzhou, Guangdong Province, China.

34.     SSoT's web site similarly represents that it is a "complete OEM solution" servicing project needs from "process design, to fabrication and installation."   SSoT's website, https://www.ssot.com.hk/ (visited February 21, 2023).

35.     SSoT lists "W&Y Distillation Technologies, LLC" as its USA office with an address at 713 Manns Harbor Drive, Apollo Beach, Florida, FL 33572. https://www.ssot.com.hk/contact-us/ (visited February 21, 2023).

36.     Upon information and belief, Weyrauch and Yang are the sole members of SSoT.

37.     W&Y Distillation further states that it prefabricates and assembles parts in the United States and then ships those parts to SSoT in China and elsewhere.  **This is the identical business model developed by the Plaintiff-Entities.**

38.     Upon information and belief, Defendant Weyrauch is an adult individual who resides at 713 Manns Harbor Drive, Apollo Beach, Florida 33572.

39.     Upon information and belief, Defendant Yang is an adult individual with an address at 58-12 208th Street, Oakland Gardens, New York 11364.

40.     As set forth above, Weyrauch and Yang are each a member, manager, and director of the Plaintiff-Entities.

41.     Upon information and belief, CST is a fictious name for Weyrauch with an address at 713 Manns Harbor Drive, Apollo Beach, Florida 33572.

42.     Upon information and belief, DTL is a limited company owned and controlled by Yang with a registered address at Flat C (A), 1/F., 73 Chuen Lung Street, Tsuen Wan, Nt, Hong Kong.

43.     Upon information and belief, W&Y Engineering is a limited company owned and controlled by Weyrauch and Yang with a registered address at Flat C (A), 1/F., 73 Chuen Lung Street, Tsuen Wan, Nt, Hong Kong.

## JURISDICTION / VENUE / CHOICE OF LAW

44.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C § 1331.

45.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same nucleus of operative facts as Plaintiffs' federal claims.

46.     Plaintiffs' causes of action for injunctive / equitable relief are authorized by 28 U.S.C. § 2202, Rule 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

47.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction here.

48.     The Member-Defendants are each a member, manager, and director of TPT with a facility located at 168 S. Cedar Street, Nazareth, Pennsylvania 18064 in Northampton County.

49.     Pursuant to the Operating Agreements for the Plaintiff-Entities, Pennsylvania law applies to this matter.  Operating Agreements, § 9.5.

### DEMAND FUTILITY

50.     The Member-Plaintiffs bring this action derivatively on behalf of the Plaintiff-Entities.

51.     It would be futile for the Member-Plaintiffs to demand management of the Plaintiff-Entities institute this action.

52.     The Member-Defendants are each twenty-five-percent (25%) members in the Plaintiff-Entities and, thus, own fifty percent (50%) of the control of the Plaintiff-Entities' respective management.

53.     The "affirmative vote of Members holding more than fifty percent (50%) of the Percentages then held by Members" is required to approve any matter coming before the boards of the Plaintiff-Entities.  Operating Agreements, § 5.2.2.

54.     As the Member-Defendants have committed the acts and/or approved of the acts that are the subject of the Member-Plaintiffs' derivative claims, if the Member-Defendants were to bring this action, it would be necessary for them to sue themselves.

55.     The Plaintiff-Entities' management would, therefore, not be able to properly prosecute this action.

56.     Moreover, the management of the Plaintiff-Entities have had knowledge of the matters complained of herein and have failed to seek redress on behalf of the Plaintiff-Entities.

57.     By reason of the foregoing, it is unnecessary to make any demand on the Plaintiff-Entities since such demand would be futile.

## FACTS UNDERLYING THE CAUSES OF ACTION

### The Formation of TPT and First Rainbow

58.     In early 2013, Schaffer formed TPT as a startup specialty gas and equipment business.

59.     Over the course of the next year, Schaffer worked on developing various business models and assembling a team to own and operate TPT.

60.     Schaffer subsequently identified Pfeifer, Yang, and Weyrauch as potential TPT co-owners, each with a unique skillset to contribute to TPT.

61.     On or about December 31, 2013, Pfeifer, Yang, and Weyrauch joined Schaffer as equal owners, managers, and directors of TPT, each owning a 25% interest in TPT.

62.     Over the next year, Pfeifer, Yang, Weyrauch, and Schaffer worked part time to develop TPT, as they marketed and sought potential opportunities for TPT.

### TPT / First Rainbow Fund Weyrauch to Work Fulltime

63.     Pfeifer, Yang, Weyrauch, and Schaffer subsequently formed First Rainbow to provide TPT products and services to China.

64.     In 2015, Yang and Schaffer successfully secured a very lucrative brokerage contract for TPT and First Rainbow with a company based in China.

65.     Instead of splitting up the commission from that brokerage contract, Pfeifer, Yang, Weyrauch, and Schaffer decided to pay Weyrauch a salary (in addition to his share of profits) from the brokerage contract to financially enable him to leave his employer and work fulltime for TPT and First Rainbow.

**TPT and First Rainbow Achieve Significant Success and**
**Amass an Inventory of Proprietary Processes and Information**

66.     Ultimately -- after a lot of hard work by Pfeifer, Yang, Weyrauch, and Schaffer -- TPT and First Rainbow achieved significant success, and by 2018, Pfeifer, Schaffer, Yang, and Weyrauch were all working fulltime for TPT and First Rainbow.

67.     Since that time, TPT and First Rainbow have built solid reputations for providing specialty gas services and products to their customers.

68.     TPT and First Rainbow have amassed a significant library of proprietary blue prints, plans, and drawings provided by their customers for the purpose of allowing TPT and First Rainbow to supply services and products.

69.     TPT and First Rainbow have also developed and accumulated a substantial inventory of proprietary methods, processes, drawings, plans, parts, equipment, and tools necessary for them to supply services and products to their customers.

70.     Over the last five (5) years, the Plaintiff-Entities have achieved sales of approximately eight million dollars ($8,000,000) per year.

**The Pandemic Hits**

71.     Just as business for TPT and First Rainbow was booming, the COVID-19 pandemic struck, with the US and China both imposing significant travel restrictions.

72.     At that time, one-hundred percent (100%) of TPT and First Rainbow's end projects were based in China.

73.     The COVID-19 travel restrictions created significant challenges for TPT and First Rainbow and strained relations between Yang and Weyrauch and Schaffer and Pfeifer.

74.     As a result of the travel restrictions, TPT and First Rainbow pivoted their business models to mostly designing, fabricating, and delivering specialty gas equipment to China.

75.     Prior to the pandemic, TPT and First Rainbow provided a substantial amount of specialty gas services to China, but this was no longer feasible with the pandemic's travel restrictions.

76.     Ultimately, this decreased the amount of work for Schaffer and Pfeifer and increased the work demands on Weyrauch, the specialty-gas engineer for TPT and First Rainbow.

77.     With the US in lockdown and with travel restricted to China, Schaffer and Pfeifer had less work, while Yang lived in China and was working directly with TPT and First Rainbow's clients in China.

**Weyrauch Conspires with Yang to Divert TPT and First Rainbow**
**Opportunities to Entities Owned and Controlled by Weyrauch and Yang**

78.     As time went by, Weyrauch became increasingly unhappy with the division of work caused by the pandemic.

79.     Weyrauch repeatedly threatened Pfeifer that he was going to start redirecting business through Weyrauch's own company, including but not limited to, the business of one of TPT's major, long-time clients, the Messer Group.

80.     Pfeifer objected and suggested a meeting of the members in which the group could discuss and address Weyrauch's concerns.

81.     Weyrauch ignored Pfeifer's suggestion.

82.     During this time, Schaffer and Pfeifer, on behalf of TPT, were working to market new projects and clients in the US where they could more significantly contribute to TPT's operations.

83.     Notwithstanding, when Schaffer and Pfeifer would propose new US projects and opportunities to Weyrauch, he summarily dismissed such proposals and eventually started ignoring Schaffer.

**Evidence Mounts of Weyrauch and Yang's Unlawful Scheme**

84.     Schaffer and Pfeifer subsequently discovered that Weyrauch and Yang had already formed two (2) new entities and were diverting TPT and First Rainbow work to their new companies.

85.     In the summer of 2022, one of the independent contractors that routinely worked with TPT and First Rainbow simply stopped responding to Pfeifer's calls and text messages.

86.     When Pfeifer asked Weyrauch about the contractor, Weyrauch advised Pfeifer that the contractor no longer wanted to perform fabrication work.  Weyrauch lied.

87.     In fact, in November 2022, Schaffer and Pfeifer discovered that such contractor was working for Weyrauch and Yang under one of their newly-created entities and was performing work that directly competed with TPT and First Rainbow.

88.     During that same time, another one of TPT and First Rainbow's regular independent contractors advised Pfeifer that she would not be traveling to Florida to work on the next project due to a personal issue with another independent contractor.

89.     This was a surprise to Schaffer and Pfeifer, as TPT and First Rainbow did **not** have any then-existing work in Florida.

90.     When Pfeifer expressed his surprise, the contractor informed Pfeifer that Weyrauch had "a whole setup down there [in Florida]," including a new welder, which is a critical and expensive piece of equipment in the specialty gas industry.

91.     When the contractor asked Weyrauch whether Pfeifer was aware of Weyrauch and Yang's Florida operations, Weyrauch lied, again.  He said Pfeifer was aware of his work in Florida, but he advised the contractor not to talk about it with Pfeifer.

92.     Pfeifer and Schaffer were shocked to learn of these conversations, and, of course, had **no** knowledge of Weyrauch and Yang's competing operations in Florida or elsewhere.

93.     Around this same time, one of TPT's clients asked Pfeifer about TPT and First Rainbow's business "in Florida."

94.     Unbeknown to Pfeifer and Schaffer, Weyrauch had moved to Florida and opened a new "Fabrication Facility" to perform specialty gas work in direct competition with TPT and First Rainbow.

95.     It is believed that Weyrauch and Yang, through the Defendant-Entities, were (and are) bidding on projects for TPT's and First Rainbow's clients.

96.     In early December 2022, Pfeifer met with one of TPT and First Rainbow's long-time vendors who inquired about W&Y Distillation and its relationship to TPT and First Rainbow.

97.     Pfeifer, of course, advised the vendor that there was no relationship between W&Y Distillation and TPT and First Rainbow.

98.     The vendor advised Pfeifer that W&Y Distillation had recently placed a large order for export to China and specifically mentioned the order was for NF3, a molecule that falls squarely within TPT and First Rainbow's specialized work.

### Weyrauch and Yang Use TPT's and First Rainbow's Assets, Proprietary Information, and Contacts to Directly Compete with TPT and First Rainbow

99.     Adding insult to injury, on or about November 2022, Schaffer and Pfeifer discovered Weyrauch and Yang's websites for W&Y Distillation and SSoT.

100.    The websites describe their businesses as performing the very same specialized work as TPT and First Rainbow.

101.    Incredibly, the websites for W&Y Distillation and SSoT contain photographs of projects performed by TPT and First Rainbow and explicitly identify certain partners and subcontractors of TPT and First Rainbow as being connected to W&Y Distillation and SSoT.

102.    Indeed, virtually 100% of the photographs on the websites for W&Y Distillation and SSoT are of projects performed by TPT and First Rainbow.

103.    The Defendants have been using First Rainbow's and TPT's assets to divert business opportunities away from TPT and First Rainbow to businesses owned and/or controlled by Weyrauch and Yang, including, but not limited to, W&Y Distillation and SSoT.

104.    Additionally, the Defendants are poaching TPT and First Rainbow's long-term contractors who, among other things, assemble the equipment TPT and First Rainbow design.

105.    Moreover, the Defendants are using TPT and First Rainbow's confidential and/or proprietary information, including but not limited to their designs, customer lists, and contractor/vendor lists, to unfairly compete with TPT and First Rainbow.

106.    Weyrauch and Yang are also failing to fulfill their contractual obligations for TPT and First Rainbow's current projects, exposing TPT and First Rainbow to potentially significant damages if Weyrauch and Yang continue to ignore their TPT and First Rainbow contractual obligations.

107.    Pursuant to the Operating Agreements, each member of TPT and First Rainbow is required to, among other things, "devote his time and attention to the business of the Company to the extent that the business of the Company requires," as well as "devote such time to the business and affairs of the Company as is necessary to carry out the Company's objectives."  Operating Agreements, §§ 5.3, 5.4.1.

108.    Under the Operating Agreements, a Director, *such as Weyrauch and Yang*, shall be liable "in damages or otherwise, to any Member or to the Company … [when] the Director has breached or failed to perform its duties under the Law and such breach or failure to perform constitutes self-dealing, willful misconduct, recklessness or an intentional breach of this Agreement." *Id*. at 5.5.1.

109.    Moreover, each signatory to the Operating Agreements expressly recognizes that "irreparable injury will result from a breach of any provision" thereof, thereby entitling the non-breaching party(ies) to specific performance and/or injunctive relief. *Id*. at 9.3.

110.    Weyrauch and Yang have repeatedly breached the Operating Agreements and their duties as members, managers, and directors of TPT and First Rainbow, with the intent to disadvantage and dismantle the business operations of TPT and First Rainbow and divert their assets, profits, opportunities, and/or customers to other corporations and businesses owned and/or controlled by Weyrauch and Yang.

## COUNT I

### BREACH OF FIDUCIARY DUTY

#### *Plaintiffs v. Weyrauch, Yang, and DTL*

111.    Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

112.    As members, managers, and directors of the Plaintiff-Entities, the Member-Defendants owe fiduciary duties of care, loyalty, and good faith to Plaintiffs not to engage in grossly negligent, reckless, or intentional misconduct and to avoid self-dealing.

113.    As members, managers, and directors of the Plaintiff-Entities, the Member-Defendants have a legal obligation to perform their duties in a manner that they reasonably believe to be in the Plaintiff-Entities' best interests.

114.    As members, managers, and directors of the Plaintiff-Entities, the Member-Defendants owe a fiduciary duty of loyalty, which includes the duty to account to the Plaintiff-Entities and to hold as trustee for them any property, profit or benefit derived by the Member-Defendants: (i) in the conduct of the Plaintiff-Entities' activities and affairs; (ii) from a use by the Member-Defendants of the Plaintiff-Entities' property, including confidential information; or (iii) from the appropriation of Plaintiff-Entities' opportunities.

115.    As members, managers, and directors of the Plaintiff-Entities, the Member-Defendants owe a fiduciary duty of loyalty, which includes the duty to refrain from dealing with the Plaintiff-Entities in the conduct of their activities and affairs as or on behalf of a person having an interest adverse to the Plaintiff-Entities.

116.    As members, managers, and directors of the Plaintiff-Entities, the Member-Defendants owe a fiduciary duty of loyalty, which includes the duty to refrain from competing with the Plaintiff-Entities.

117.    Plaintiffs placed their trust and confidence in the Member-Defendants.

118.    The Member-Defendants' conduct described throughout this Complaint constitutes grossly negligent, reckless, or intentional misconduct and self-dealing, and, thus, a breach of their duties owed to Plaintiffs.

119.    The Member-Defendants have failed to perform their duties according to law and such breaches or failure to perform constitutes self-dealing, willful misconduct, recklessness and/or an intentional breach of the Operating Agreements.

120.    The Member-Defendants are unlawfully using TPT's and First Rainbow's confidential and/or proprietary information, including but not limited to their designs, customer lists, and contractor/vendor lists, to unfairly compete with TPT and First Rainbow.

121.    For their own personal gain, the Member-Defendants have breached their fiduciary duties owed to Plaintiffs by, as set forth above, disadvantaging and dismantling the business operations of the Plaintiff-Entities and diverting their assets, profits, opportunities, and/or customers to other corporations and businesses owned and/or controlled by the Defendants.

122.    The Member-Defendants have acted oppressively and unfairly toward Plaintiffs.

123.    As a direct and proximate result of the Member-Defendants' breaches of their fiduciary duties owed to Plaintiffs, Plaintiffs have suffered and continue to suffer damages.

124.    Further, as a direct and proximate result of the Member-Defendants' duty to account to the Plaintiff-Entities and to hold as trustee for it any property, profit or benefit derived by the Member-Defendants, the Plaintiffs are entitled to disgorgement remedies in the form of a constructive trust.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter judgment in their favor and against Defendants John Weyrauch, Mark Zhi Xuan Yang, and Diffusion Technologies Ltd. for: (i) damages, including compensatory, consequential, incidental, and punitive damages, together with filing fees, interest, and costs of suit; (ii) a constructive trust on behalf of the Plaintiffs, which includes any property, profit or benefit derived by the Defendants; and (iii) such other relief as this Court may deem just and proper.

## COUNT II

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT ("CFAA")

### Plaintiffs v. Defendants

125.    Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

126.    TPT and First Rainbow store and maintain their proprietary and confidential information on their computers and in an encrypted, password-protected cloud storage account.

127.    TPT and First Rainbow use their computers and cloud storage account to transact interstate commerce.

128.    In violation of the CFAA, Weyrauch and Yang, individually and as agents of the Defendant Entities, have without authorization or exceeding their authorized access, intentionally and with the intent to defraud, access, obtain, communicate, deliver and/or transmit information from TPT's and First Rainbow's computers and cloud storage account to W&Y Distillation and SSoT and the other Defendant Entities who are not entitled to receive such information.

129.    In violation of the CFAA, Weyrauch and Yang, individually and as agents of the Defendant Entities, did intentionally and with the intent to defraud, cause customers' orders and other valuable, confidential, and proprietary information to be transmitted from TPT's and First Rainbow's computers and cloud storage account to W&Y Distillation and SSoT and the other Defendant Entities who are not entitled to receive such information.

130.    By reason of Weyrauch's and Yang's violation of the CFAA, TPT and First Rainbow have suffered damages and losses in excess of $5,000 during a one-year span, said damages include, the diminution in value and impairment of the integrity of TPT's and First Rainbow's confidential, proprietary, and trade secret information, the loss of goodwill, and interference with TPT's and First Rainbow's customers.

131.    Weyrauch and Yang, individually and as agents of W&Y Distillation and SSoT and the other Defendant Entities, have, and upon information and belief, intend to continue using the information they unlawfully acquired from TPT's and First Rainbow's protected computers and cloud storage account.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter judgment in their favor and against Defendants including, not limited to: (i) an award of damages in excess of $50,000; (ii) an award of preliminary and permanent injunctive relief; (iii) interest, costs, and attorney's fees to the extent allowable by law; and (iv) such other relief as this Court deems just and equitable and/or as may be allowable by law.

## COUNT III

### CONVERSION

*Plaintiffs v. Defendants*

132.    Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

133.    Defendants, as set forth above, intentionally and unlawfully exercised, and continue to exercise, dominion and control, for their own personal use and benefit, the confidential and proprietary information that Plaintiffs co-developed for the Plaintiff-Entities.

134.    Defendants' conduct constitutes a conversion of Plaintiffs' property.

135.    Defendants' acts of conversion were committed willfully, knowingly, maliciously, and in conscious disregard of their legal obligations to Plaintiffs.

136.    As a direct and proximate result of Defendants' acts of conversion, Plaintiffs have suffered and continue to suffer damages.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter judgment in their favor and against Defendants for: (i) damages, including compensatory, consequential, incidental and punitive damages, together with filing fees, interest, and costs of suit; and (ii) such other relief as this Court may deem just and proper.

## COUNT IV

### BREACH OF CONTRACT

*Plaintiffs v. Weyrauch, Yang, and DTL*

137.     Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

138.     The Operating Agreements are binding contractual agreements between the Plaintiffs and the Member-Defendants.

139.     Pursuant to the Operating Agreements, each member of TPT and First Rainbow is required to, among other things, "devote his time and attention to the business of the Company to the extent that the business of the Company requires," as well as "devote such time to the business and affairs of the Company as is necessary to carry out the Company's objectives."  Operating Agreements, §§ 5.3, 5.4.1.

140.     The Operating Agreements provide that "[e]ach Member understands and acknowledges that the conduct of the Company's business may involve business dealings and undertakings with Members and their Affiliates. In any of those cases, those dealings and undertakings shall be at arm's length and on commercially reasonable terms." *Id*. at 5.4.2

141.     Under the Operating Agreements, a Director, such as Weyrauch and Yang, shall be liable "in damages or otherwise, to any Member or to the Company … [when] the Director has breached or failed to perform its duties under the Law and such breach or failure to perform constitutes self-dealing, willful misconduct, recklessness or an intentional breach of this Agreement." *Id*. at 5.5.1.

142.     Moreover, Weyrauch and Yang explicitly admit that "irreparable injury will result from a breach of any provision" of the Operating Agreements, thus entitling the non-breaching

party(ies) to specific performance and/or injunctive relief. Specifically, the Operating Agreements provide:

> Specific Performance. The parties recognize that irreparable injury will result from a breach of any provision of this Agreement and that money damages will be inadequate to fully remedy the injury. Accordingly, in the event of a breach or threatened breach of one or more of the provisions of this Agreement, any party who may be injured (in addition to any other remedies which may be available to that party) shall be entitled to one or more preliminary or permanent orders (i) restraining and enjoining any act which would constitute a breach or (ii) compelling the performance of any obligation which, if not performed, would constitute a breach.

Operating Agreements, § 9.3.

143. Every contract, including the Operating Agreements, imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

144. As members, managers, and directors of the Plaintiff-Entities, the Member-Defendants have a duty to discharge their statutory and contractual duties and obligations and exercise any rights consistent with the contractual obligation of good faith and fair dealing.

145. The duty of good faith and fair dealing protects agreed-upon arrangements from conduct that is manifestly beyond what a reasonable person could have contemplated when the arrangements were made.

146. The Member-Defendants' conduct as described above is manifestly beyond what the Plaintiffs contemplated when the Operating Agreements were executed.

147. The Member-Defendants have acted oppressively and unfairly toward Plaintiffs.

148. The Member-Defendants dealings with Plaintiffs have been commercially unreasonable and not on arm's length terms.

149. The Member-Defendants have failed to devote sufficient time to TPT and First Rainbow.

150.    The Member-Defendants have failed to perform their duties according to law and such breaches or failure to perform constitutes self-dealing, willful misconduct, recklessness and/or an intentional breach of the Operating Agreements.

151.    The Member-Defendants are unlawfully using TPT's and First Rainbow's confidential and/or proprietary information, including but not limited to their designs, customer lists, and contractor/vendor lists, to unfairly compete with TPT and First Rainbow.

152.    The Member-Defendants have breached their fiduciary duties owed to Plaintiffs by, as set forth above, disadvantaging and dismantling the business operations of the Plaintiff-Entities and diverting their assets, profits, opportunities, and/or customers to other corporations and businesses owned and/or controlled by the Defendants.

153.    The Plaintiffs have, and continue to, perform all obligations under the Operating Agreements.

154.    As a direct and proximate result of the Member-Defendants' breaches of the Operating Agreements and the duty of good faith and fair dealing, the Plaintiffs have suffered and continue to suffer damages.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter judgment in their favor and against Defendants John Weyrauch, Mark Yang, and Diffusion Technologies Ltd. for: (i) damages, including compensatory, consequential, incidental damages, together with filing fees, interest, and costs of suit; (ii) permanent injunctive relief against Defendants John Weyrauch, Mark Zhi Xuan Yang, and Diffusion Technologies Ltd. to enjoin any further breaches of the Operating Agreements; and (iii) such other relief as this Court may deem just and proper.

## COUNT V

**MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL BUSINESS INFORMATION IN VIOLATION OF THE DEFEND TRADE SECRETS ACT AND THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT**

***Plaintiffs v. Defendants***

155.    Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

156.    The Plaintiffs' trade secrets and confidential business information include a significant inventory of proprietary methods, drawings, plans, parts, equipment, and tools necessary for them to supply services and products to their customers relating to specialty gas services and products, as well as their customer lists and contractor/vendor lists (collectively, the "**Trade Secrets**").

157.    Plaintiffs have derived independent economic value from their Trade Secrets being kept from the general public and have taken reasonable steps to keep their Trade Secrets confidential.

158.    Plaintiffs have used their Trade Secrets to transact interstate commerce.

159.    In violation of the Defend Trade Secrets Act ("DTSA") and the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), Defendants have misappropriated and wrongfully used Plaintiffs' Trade Secrets to unfairly compete with TPT and First Rainbow and to disadvantage and dismantle the business operations of TPT and First Rainbow and divert their assets, profits, opportunities, and/or customers to other corporations and businesses owned and/or controlled by Weyrauch and Yang.

160.    Defendants' misuse of Plaintiffs' Trade Secrets and confidential business information is wanton, willful, intentional, outrageous and malicious.

161.    As a direct and proximate cause of Defendants' misuse of Plaintiffs' Trade Secrets and confidential business information, Plaintiffs have suffered (and continue to suffer) irreparable harm and damages exceeding $5,000.00.

162.    Defendants' misuse of Plaintiffs' Trade Secrets and confidential business information will continue indefinitely unless enjoined by this Court.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter judgment in their favor and against Defendants for: (i) an award of compensatory, liquidated, punitive damages; (ii) an award of special, preliminary and permanent injunctive relief; (iii) an award of attorney fees and costs; and (iv) such other relief as this Court deems just and equitable.

## COUNT VI

## UNFAIR COMPETITION

### *Plaintiffs v. Defendants*

163.    Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

164.    As set forth hereinabove, Defendants' tortious and unlawful conduct is contrary to honest industrial and commercial practices.

165.    Such conduct includes, but is not limited to, the Defendants' misappropriation of property owned by TPT and First Rainbow for the commercial advantage of Defendants.

166.    The conduct of the Defendants is unfair, inequitable, and constitutes an assault upon the goodwill TPT and First Rainbow have developed and maintained with their customers.

167.    TPT and First Rainbow have no adequate remedy of law by which to prevent the Defendants from unfairly competing with TPT and First Rainbow and money damages alone will not fully compensate TPT and First Rainbow for the unfair competition.

168.    The conduct of the Defendants is willful, wanton, malicious, and outrageous.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter judgment in their favor and against Defendants for: (i) damages, including compensatory, consequential, incidental and punitive damages, together with filing fees, interest, and costs of suit; and (ii) such other relief as this Court may deem just and proper.

## COUNT VII

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

*Plaintiffs v.  Defendant Entities (not including DTL)*[1]

169.    Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

170.    TPT and First Rainbow have contractual and business relations and/or prospective contractual and business relations with their customers and potential customers.

171.    W&Y Distillation and SSoT, along with the other Defendant Entities, have intentionally interfered with the actual and prospective contractual and business relations of TPT's and First Rainbow's customers and potential customers.

172.    The Defendant Entities have intentionally harmed TPT's and First Rainbow's contractual and/or business relations.

173.    The Defendant Entities' interference is without privilege.

174.    The Defendant Entities' conduct is willful, wanton, reckless and outrageous.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter judgment in their favor and against the Defendant Entities for: (i) damages, including compensatory, consequential, incidental and punitive damages, together with filing fees, interest, and costs of suit; and (ii) such other relief as this Court may deem just and proper.

---

[1] For purposes of Count VII, the defined term "Defendant Entities" includes only Defendants W&Y Distillation, SSOT, W&Y Engineering, and CST.  It does <u>not</u> include DTL.

## COUNT VIII

## CIVIL CONSPIRACY

### *Plaintiffs v. Defendants*

175.     Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

176.     Defendants conspired to breach their fiduciary duties, to misappropriate, divert and convert the corporate opportunities, assets and confidential business information of TPT and First Rainbow, to violate CFA, DTSA, and PUTSA, and to unfairly compete and interfere with TPT's and First Rainbow's contractual and business relations.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter judgment in their favor and against Defendants for: (i) damages, including compensatory, consequential, incidental and punitive damages, together with filing fees, interest, and costs of suit; and (ii) such other relief as this Court may deem just and proper.

## COUNT IX

## UNJUST ENRICHMENT

### *Plaintiffs v. Defendants*

177.     Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

178.     Defendants have misappropriated and wrongfully used Plaintiffs' Trade Secrets to unfairly compete with TPT and First Rainbow and to disadvantage and dismantle the business operations of TPT and First Rainbow and divert their assets, profits, opportunities, and/or customers to other corporations and businesses owned and/or controlled by Weyrauch and Yang.

179.     By reason of the foregoing, Defendants have been unjustly enriched at the expense and detriment of Plaintiffs.

180.    Defendants accepted such benefits under such circumstances that it would be inequitable for them to be retained without payment.

181.    As a result of Defendants' actions, Plaintiffs have suffered and continue to suffer damages.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment against the Defendants for monetary and compensatory damages in an amount to be proven at trial, plus court costs, interest, punitive damages and other damages as the Court deems appropriate, and such other and further relief as this Court or a jury may deem just and proper.

## COUNT X

### ACCOUNTING

### *Plaintiffs v. Defendants*

182.    Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

183.    TPT and First Rainbow are entitled to a full and complete accounting from the Defendants with respect to all TPT and First Rainbow corporate opportunities and assets misappropriated, diverted and/or converted to the Defendants.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court order the Defendants to provide a full and complete accounting of all corporate opportunities and assets of TPT and First Rainbow that were converted to Defendants.

## COUNT XI

## CONSTRUCTIVE TRUST

### *Plaintiffs v. Defendants*

184.    Plaintiffs incorporate by reference the preceding paragraphs as if set forth herein.

185.    The Defendants have intentionally and unlawfully exercised, and continue to exercise, dominion and control over the confidential and proprietary information of the Plaintiff-Entities for their own benefit.

186.    Accordingly, while this dispute is litigated, to protect TPT and First Rainbow, a constructive trust should be imposed on all of the monies and assets that the Defendants have or will obtain and on all of the monies and assets of any other company owned and/or controlled by the Defendants.

WHEREFORE, Plaintiffs respectfully request this Honorable Court impose a constructive trust on (i) all of the monies and assets that Defendants have or will obtain and on (ii) all of the monies and assets of any other company owned and/or controlled by the Defendants, and (iii) such other relief as this Court may deem just and proper.

CLARK HILL, PLC

/S/ H. David Seidman
H. David Seidman, Esquire (PA ID: 87769)
Two Commerce Center
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Phone: (215) 640-8515 | Fax: (215) 640-8501

Ashley L. Buck, Esquire (PA ID: 320537)
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219-1425
Phone: (412) 394-7711 | Fax: (412) 394-2555

Date: March 14, 2023                    *Counsel for Plaintiffs*

## **VERIFICATION**

I, John Schaffer, on behalf of Plaintiffs, do hereby state that the facts set forth in this Complaint are true and correct to the best of my knowledge, information, and belief.

I understand that this verification is made subject to 28 U.S.C. 1746 providing for criminal penalties for unsworn falsification to authorities.

_____
                                         John Schaffer

Dated: 3/12/2023

DocuSign Envelope ID: 3F0ADE52-32BC-407F-BADE-95DFCA95E925

## **VERIFICATION**

I, Fred Pfeifer, on behalf of Plaintiffs, do hereby state that the facts set forth in this Complaint are true and correct to the best of my knowledge, information, and belief.

I understand that this verification is made subject to 28 U.S.C. 1746 providing for criminal penalties for unsworn falsification to authorities.

_Fred Pfeifer_
_____
Fred Pfeifer

Dated: 3/14/2023